# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HEMPFLING, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 06-334 |
| UNITED REFINING COMPANY OF | ) Judge Nora Barry Fischer |
| PENNSYLVANIA, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Richard Hempfling filed the instant civil rights action against Defendant United Refining Company of Pennsylvania (hereinafter "Defendant" or "URC"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") as well as retaliation, all stemming from his demotion from manager to assistant manager at Defendant's Prospect facility and subsequent replacement by a younger employee in or around September of 2005.[1] Pending before the Court is a Motion for Summary Judgment of Defendant United Refining Company of Pennsylvania [DE 27]. For the following reasons, said motion is denied.

## FACTS[2]

Defendant URC owns and operates a number of gas stations and convenience stores known as Kwik Full / Red Apple Food Marts. Plaintiff Hempfling is a 57 year old male who has worked

---

[1] In his initial and Amended Complaints, Plaintiff alleged claims for gender discrimination under Title VII of the Civil Rights Act of 1963 ("Title VII") and the PHRA. However, on April 10, 2007, the parties stipulated to the dismissal of said claims. (*See* Docket No. 24).

[2] Except as otherwise noted, the facts cited in this section are admitted by Plaintiff.

1

for Defendant URC in various roles since October of 1983, beginning as an assistant manager at the Prospect facility.[3] Defendant's Facts at ¶7; Plaintiff's Facts at ¶7.

1. *Facts pertinent to age discrimination claim*

In August of 1985, Plaintiff was promoted to manager of URC's Prospect facility, which was a small, full-serve facility until May of 1998, when a new, larger store was built. Defendant's Facts at ¶7; Plaintiff's Facts at ¶7. Plaintiff continued in his role as manager of the new, larger Prospect facility.

After the expansion of the Prospect facility, on undisclosed "several occasions," Defendant URC asserts that David Dunn (Regional Manager) and Pam Devore (District Manager) "cleaned the Prospect store and reset all of the shelves and merchandise, showing Hempfling how to perform these duties." Defendant's Facts at ¶15.[4] On March 18, 2003, Defendant by way of Mr. Dunn and Robert Kaminske (Area Manager) "counseled" the Plaintiff regarding "the appearance of the [Prospect facility], cleanliness, condition of the deli area, task urgency, inventory, attention to detail, [and] leadership, among other things" and issued a written warning to Plaintiff as to the same. Defendant's Facts at ¶15.[5] On May 23, 2003, Defendant URC via Mr. Dunn and Mr. Kaminske transferred Plaintiff from the Prospect facility to the Slippery Rock facility, a much smaller facility

---

[3] While not specifically stated in the briefs, it appears that Plaintiff currently holds the position of an assistant manager at URC's Prospect facility.

[4] Plaintiff denies this assertion, responding that "neither Mr. Dunn [n]or Ms. Devore ever assisted with the cleaning of the store, although they did assist Plaintiff in organizing the storage shed on one occasion." Plaintiff's Facts at ¶13.

[5] Plaintiff disputes the date of the "counsel[ing]" as well as Defendant URC's characterization of the condition of the Prospect facility during his tenure as manager. Plaintiff's Facts at ¶15. Further, Plaintiff asserts that he did not receive any written warning until after his transfer. *Id.*

that is "easier to manage" than the Prospect facility. Defendant's Facts at ¶¶17, 20; Plaintiff's Facts at ¶¶17, 20. Mr. Kaminske informed Hempfling that URC transferred him because the Prospect facility was not clean enough, the store was not making enough money on sales merchandise and gas, and projections were going down and he had problems with audits. Defendant's Facts at ¶18; Plaintiff's Facts at ¶18.[6] Upon his transfer to the Slippery Rock facility, Plaintiff's pay rate did not change. Defendant's Facts at ¶20; Plaintiff's Facts at ¶20.

Based on Plaintiff's performance at the Slippery Rock Facility, which Defendant characterizes as "competent[]" but Plaintiff characterizes as "outstanding" and "very good", URC gave Plaintiff "another chance" as the manager of the Prospect facility. Defendant's Facts at ¶23; Plaintiff's Facts at ¶23. On November 14, 2003, URC via Pam Devore transferred Hempfling back to the Prospect facility.[7] Defendant's Facts at ¶24; Plaintiff's Facts at ¶24.

In 2004, during Plaintiff's term as manager, the Prospect facility received a "very poor" rating as part of a "Spring-Clean Up review." Defendant's Facts at ¶25; Plaintiff's Facts at ¶25. Thereafter on April 6, 2005, Plaintiff attended a management meeting regarding the efficient running of a store. Further, on June 18, 2005, Ms. Devore sent an e-mail to all store managers in her area including Plaintiff "with details on what needed to be worked on to keep stores clean and organized." Defendant's Facts at ¶26; Plaintiff's Facts at ¶26. On the 2005 "Spring-Clean-Up Review", Plaintiff received an "extremely poor" rating. Defendant's Facts at ¶27; Plaintiff's Facts at ¶27. Sometime

---

[6] Plaintiff acknowledges that these were the stated reasons provided to him by Mr. Kaminske, however he disputes the validity of these criticisms. Plaintiff's Facts at ¶¶18.

[7] In October of 2003, Ms. Devore replaced Mr. Kaminske as District Manager and became Plaintiff's direct supervisor. Defendant's Facts at ¶5; Plaintiff's Facts at ¶5.

3

after Plaintiff's transfer back to the Prospect facility, Mr. Dunn and Ms. Devore discussed their concerns regarding the cleanliness of the store with Hempfling. Defendant's Facts at ¶28; Plaintiff's Facts at ¶28.[8] On or about July 13, 2005 and again in August of 2005, Mr. Dunn and Ms. Devore visited the Prospect facility and "counseled Hempfling on the cleanliness and disorganization of the store." Defendant's Facts at ¶30.[9]

On August 29, 2005, Ms. Devore sent a "memo" to the Plaintiff informing him of his demotion from manager to assistant manager effective September 2, 2005. In the memo, after detailing reasons for his demotion, Ms. Devore stated the following: "I understand that you have been with the company since 1983 and I appreciate your dedication to the company but there comes a time where people lose some of their management skills. The decreases in management skills are very obvious in this case." Docket No. 31-6, at 9. According to Defendant, Plaintiff was demoted "due to his inability to manage the Prospect facility, failure to rectify the problems that he had been warned about on several occasions, in addition to a decrease in sales volumes." Defendant's Facts at ¶¶31; Plaintiff's Facts at ¶31.[10] At the time of his demotion, Plaintiff was 55 years old. After consultation with Mr. Dunn, Ms. Devore made the decision to demote the Plaintiff. Defendant's Facts at ¶33; Plaintiff's Facts at ¶33. URC replaced Hempfling with Nick Zorbas as manager of the

---

[8] Plaintiff "opine[s] that this [discussion] was done to create a paper trail for his eventual demotion." Plaintiff's Facts at ¶28.

[9] Plaintiff admits that Mr. Dunn and Ms. Devore visited the store on the dates listed, but disputes Defendant's characterization of the condition and appearance of the Prospect facility. Plaintiff's Facts at ¶30.

[10] Plaintiff admits that said reasons were the same reasons stated to him, but he denies the veracity of the same and adds that the decrease in sales volume resulted from nearby competitors' lower prices. Plaintiff's Facts at ¶31.

Prospect facility. Defendant's Facts at ¶36; Plaintiff's Facts at ¶36. At the time of his promotion, Mr. Zorbas was 41 years old. Defendant's Facts at ¶36; Plaintiff's Facts at ¶36.

On December 22, 2005, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a "Dismissal and Notice of Rights" letter to the Plaintiff, which included a Notice of Suit Rights. Within 90 days of receipt of the same, on March 14, 2006, Plaintiff commenced this federal action.

2.   *Facts pertinent to retaliation claim*

Since Plaintiff filed charges with the EEOC against URC and commenced the instant lawsuit, Plaintiff has received nine (9) write-ups related to cash shortages, two (2) write-ups related to drive-offs, one (1) write-up related to Plaintiff's failure to secure a replacement cashier when he was acting as manager, and one (1) write-up related to Plaintiff's failure to perform assigned duties as manager, specifically not replacing pump filters and neglecting to perform the daily cigarette inventory.[11] Defendant's Facts at ¶11; Plaintiff's Facts at ¶11.[12] URC has a policy that all cash shortages over $5 per shift require a write-up as well as when a customer drives off without paying resulting in a shortage. Defendant's Facts at ¶¶39-40; Plaintiff's Facts at ¶¶39-40.

According to Plaintiff's deposition testimony, at various times in 2006, he was written up for excessive shortages. However, during the shifts in question, Mr. Zorbas also worked the same cash register for part of the shift yet he was not written up for any shortages during this shift. Plaintiff

---

[11] In addition to the above purported basis for retaliation, Plaintiff also alleges numerous other actions by the Defendant in his Amended Complaint and Jury Demand. However, as noted below, in his response brief, Plaintiff limits his retaliation claim to the "write-ups."

[12] Plaintiff only disputes the above write-ups insofar as he alleges that they "were issued unjustly." Plaintiff's Facts at ¶11.

asserts that "[a]t the time, when multiple employees operated a register during a shift, it was impossible to determine which of those employees w[ere] responsible for any shortage that occurred." Plaintiff's Facts at ¶102.[13]

On June 23, 2006, the EEOC issued a "Notice of Right to Sue" letter, and Plaintiff subsequently amended his Complaint accordingly.

## PROCEDURAL BACKGROUND

On March 14, 2006, Plaintiff commenced the instant action by filing a Complaint and Jury Demand, in which he alleged age discrimination under the ADEA as well as gender discrimination under Title VII. On May 3, 2006, Defendant filed its Answer and Defenses of United Refining Company, denying the crux of Plaintiff's Complaint. On October 11, 2006, Plaintiff filed an Amended Complaint and Jury Demand, in which he added claims for retaliation as well as gender and age discrimination under the Pennsylvania Human Relations Act ("PHRA"). On October 26, 2006, Defendant filed its Answer and Defenses of United Refining Company to Plaintiff's Amended Complaint, denying the allegations set forth in Plaintiff's Amended Complaint.[14] On April 10, 2007, the Court granted the parties' joint Stipulation for Dismissal of Plaintiff's Gender Discrimination

---

[13] The Court notes that Defendant URC failed to respond to "Plaintiff's Statement of Additional Material Facts Pursuant to LR 56.1C1(c). *See* Plaintiff's Facts at ¶¶87-104. Accordingly, all said facts are deemed admitted by Defendant URC. *See* W.D. Pa. L.R. 56.1(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party"). *See e.g., Gajdos v. Missig*, Civil Action No. 06-1362, 2008 WL 147150, at *1 n.1 (W.D. Pa. Jan. 14, 2008) (McVerry, J.); *Goral v. Pyramid Healthcare*, No. 2:06cv1430, 2008 WL 144201, at *2 n. 1(W.D. Pa. Jan. 11, 2008) (Cercone, J.).

[14] On April 6, 2007, the instant case was reassigned to the undersigned Judge.

Claims, in which the Court dismissed Plaintiff's claims for gender discrimination under Title VII and the PHRA.

On May 31, 2007, Defendant filed the instant motion for summary judgment. On June 29, 2007, Plaintiff filed Plaintiff's Opposition to Defendant's Motion for Summary Judgment. On July 16, 2007, Defendant filed its Reply Brief in Support of Defendant United Refining Company of Pennsylvania's Motion for Summary Judgment. On August 2, 2007, upon leave of Court, Defendant filed its Amended Reply Brief in Support of Defendant United Refining Company of Pennsylvania's Motion for Summary Judgment. Finally, on August 22, 2007, Plaintiff filed Plaintiff's Surreply Brief in Opposition to Defendant's Motion for Summary Judgment.

Accordingly, the instant motion is ripe for disposition.

## STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. &*

*Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## ANALYSIS

In its motion, Defendant requests summary judgment as to Plaintiff's age discrimination claim as well as his retaliation claim. First, as to the former, Defendant argues that it had legitimate, non-discriminatory reasons to demote Plaintiff and that Plaintiff has failed to demonstrate that said reasons constitute a pretext for unlawful discrimination. Second, as to the latter, Defendant argues that Plaintiff's Amended Complaint fails to establish a *prima facie* case of retaliation. The Court will address Defendant's arguments in turn and in detail below.

 A**.** **Age discrimination claim**

Defendant asserts that, assuming Plaintiff can establish a *prima facie* case of age discrimination, URC had legitimate, non-discriminatory reasons to demote Hempfling from manager to assistant manager, specifically his inability to manage the Prospect facility. (Docket No. 28, at 9). In addition, Defendant argues that Plaintiff has failed to meet his burden to rebut its proffered

reasons for his demotion. (Docket No. 28, at 12-14). Plaintiff responds that he has produced sufficient evidence to establish a genuine issue of material fact as to pretext with respect to his claim for age discrimination.

Both parties agree that the burden shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Plaintiff's claims for age discrimination.[15] (*See* Docket No. 28, at 8; Docket No. 32, at 4). Pursuant to *McDonnell Douglas* and its progeny, (1) plaintiff must establish a *prima facie* case; (2) defendant must then offer a legitimate nondiscriminatory reason for the employment decision in question; and (3) plaintiff may then demonstrate that the stated reason is merely a pretext for illegal discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802-803. Apparently conceding the existence of a prima facie case here, Defendant's motion proceeds directly to the second prong of the *McDonnell Douglas* test. Thus, the Court follows Defendant's lead and proceeds to the second prong–pretext.[16]

---

[15]

"Courts analyze a claim of age discrimination under the ADEA and the PHRA using the same framework." *Argue v. David Davis Enterprises, Inc.*, Civil Action No. 02-9521, 2007 WL 2844890, at *4 (E.D. Pa. Sept. 26, 2007) (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 705 (3d Cir. 2006) (applying the *McDonnell Douglas* burden-shifting analysis to a plaintiffs ADEA and PHRA claims)). Therefore, the Court will analyze Plaintiff's claims for age discrimination pursuant to the ADEA and the PHRA under the same standards and the same analysis.

[16]

Moreover, even after Plaintiff characterizes Defendant's position as to the *prima facie* case requirement in his response as being not in dispute, *see* Docket No. 32, at 4 ("In this action, Defendant apparently does not dispute Plaintiff's ability to establish a prima facie case of age discrimination"), Defendant does not challenge said characterization in its reply, which constitutes waiver of any objection thereto.

Nevertheless, the Court notes that "[i]n order to establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate that: (1) he is over forty; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hicks v. Tech Industries*, 512 F.Supp.2d 338, 347 (W.D. Pa. 2007) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006) (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir.

Turning to the second prong under *McDonnell Douglas*, the burden of production shifts to Defendant, who must articulate a legitimate, nondiscriminatory reason for Plaintiff's demotion. *See Wright v. Cor-Rite, Inc.*, No. 3:05cv2431, 2007 WL 2907947, at *2 (M.D. Pa. Oct. 2, 2007). "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)).

In lieu of the alleged age discrimination as its reason for demoting Plaintiff, Defendant asserts that it demoted Plaintiff based on his inability to effectively run the larger Prospect facility and his failure to correct specified deficiencies when warned. (Docket No. 28, at 9). In support thereof, Defendant asserts that Mr. Dunn and Mr. Kaminske "counseled" Plaintiff regarding the "appearance of the location, cleanliness, condition of the deli area, task urgency, inventory, attention to detail, [and] leadership." Defendant's Fact at ¶15. Based thereon, the Court finds that Defendant has met its "relatively light" burden of introducing evidence that would permit a conclusion that Defendant possessed a non-discriminatory reason for Plaintiff's demotion.

Turning to the third prong, once Defendant articulates a nondiscriminatory reason, Plaintiff

---

2004))). Applied here, (1) Plaintiff is over the age of 40 (and has been for all relevant times related to this matter); (2) Plaintiff is qualified for the disputed position here in that he once held the same position of manager and was offered the position of manager at another facility (Cabot); (3) Plaintiff's demotion constitutes an adverse employment action, *see Battistone v. Sam Jon Corp.*, No. Civ.A. 00-5196, 2002 WL 32345692, at *7 (E.D. Pa. Oct. 4, 2002) ("The case law makes explicit that a demotion constitutes an adverse employment action under the ADEA") (citations omitted); and (4) Plaintiff's replacement was sufficiently younger, specifically 14 years, hence permitting a reasonable inference of age discrimination, *see Barber v. CSX Distribution Services*, 68 F.3d 694, 699 (3d Cir. 1995) (holding that an eight year difference was sufficient to establish a prima facie case).

must respond by citing evidence that the rationale is pretextual. *Fuentes*, 32 F.3d at 763. "In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, [Plaintiff] must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Tomasso*, 445 F.3d at 706 (citing *Fuentes*, 32 F.3d at 764). However, "pretext is not shown by evidence that 'the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'" *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes*, 32 F.3d at 765). Instead, a plaintiff must "present evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision." *Kautz*, 412 F.3d at 467 (interpreting "principles in Fuentes"). In other words, noting the oft-quoted standard from *Fuentes*, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal quotations omitted) (internal and end citations omitted) (emphasis and alteration in original).

Challenging Defendant's purported legitimate, non-discriminatory reason for his demotion, Plaintiff points to the following: (1) performance evaluations from 1998-2002, rating him as "very good" and "outstanding," Docket No. 32, at 6; (2) the fact that URC offered Plaintiff the manager position at the Butler store, "the largest store in the district, after he had been transferred to the Slippery Rock store because of alleged deficiencies at the Prospect store", *id.*; and (3)

11

"inconsistencies and implausibilities with respect to the specific examples given of alleged performance deficiencies," *id.*, including deposition testimony of Defendant's co-employee as to the condition of the Prospect facility, *id.*, at 7-8.

Here, the Court finds that a genuine issue of material fact exists as to Plaintiff's performance in managing the Prospect facility, which Defendant offers as the legitimate, nondiscriminatory reason for his demotion. In support thereof, Defendant relies upon allegations in which URC's managers, specifically Mr. Dunn, Mr. Kaminske, and Ms. Devore, counseled Plaintiff about the condition of the Prospect facility before and after his transfer to the Slippery Rock facility. Further, Defendant relies on poor reviews that the Prospect facility received while Plaintiff was manager after his transfer back from the Slippery Rock facility. Both of the purported nondiscriminatory reasons hinge on the condition of the Prospect facility and, thus, Plaintiff's ability to run the same.

In response to Defendant's contentions as to the condition of the Prospect facility under his tenure as manager, Plaintiff offers the deposition testimony of Penny Lynn Geibel, an employee of URC who worked with the Plaintiff at the Prospect facility. Ms. Geibel testified that, during Plaintiff's tenure as manager, the Prospect facility was "perfectly fine." *See* Docket No. 31-8, at 25:2-7 (Deposition of Penny Lynn Geibel) ("Q: Now, when you first started in the Prospect store, the store that [the Plaintiff] had just been transferred from up to the [Slippery Rock facility], did you notice any dirtiness, uncleanliness, or anything that you felt or remember hit you? A: No. The store was perfectly fine") (hereinafter, "Geibel Deposition"). Ms. Geibel testified that when the Plaintiff returned to the Prospect facility from the Slippery Rock facility as manager, the condition of the store improved. *See* Geibel Deposition, at 26:11-14. Specifically, Ms. Geibel testified that, during the summer of 2005 (after URC transferred Plaintiff back to the Prospect facility) when Ms. Devore

"counseled" Plaintiff regarding the condition of the store, the Prospect facility did not appear unclean or unkempt. Geibel Deposition, at 42:4-16; *see also* Geibel Deposition, at 47:13-20 ("Q: Do you ever remember anyone telling you back in [July of 2005] that the shed was disorganized? A: No").[17] Such statements directly contradict the factual basis of Defendant's proffered legitimate, non-discriminatory reason for Plaintiff's demotion, i.e, the condition of the Prospect facility during Plaintiff's time as manager. These contentions create a genuine issue of material fact insofar as the same hinges on the credibility of the relevant witnesses, specifically Ms. Geibel versus Ms. Devore,

---

[17]
Ms. Geibel goes on to provide specifics as to Mr. Dunn's and Ms. Devore's alleged visit to the Prospect facility on or about July 13, 2005, which again, contradicts Defendant's allegations as to the condition of the store:

> Q: Do you know where [Defendant] came up with the idea on July 13 of 2005 that the office was dirty, cluttered, or disorganized?
> A: No. When you walk into the office, you can clean the floor as much you can, but there are so many stains on that floor that it just needs replaced from the roof leaking.
> Q: The next things says the sales floor area was not properly merchandised nor stocked. Did Ms. [Devore] or Mr. Dunn at that point in time, that week of July 13 of 2005 that you worked, ever come to you and tell you that.
> A: No.
> Q: Then the final thing says the merchandise and shelves were dirty. Do you recall that being pointed out to you at that time?
> A: No.
> Q: Would you and [Plaintiff] from time to time see to it that the shelves were not dirty?
> A: Yes.
> Q: Would you, in fact, make sure from time to time that the merchandise was restacked on the sales floor.
> A: Yes.

Geibel Deposition, at 48:21-49:21.

and to a lesser extent, Mr. Dunn and Mr. Kaminske, which is best left to a jury to decide.[18]

Moreover, the Court finds significant Ms. Devore's own words in the August 29, 2005 demotion "memo," noting "that there comes a time where people lose some of their management skills." Docket No. 31-6, at 9. In particular, the temporal proximity of this statement to Plaintiff's demotion (i.e., the statement appeared in the memorandum informing Plaintiff of his demotion) as well as the source of the statement (i.e., Ms. Devore's role as the decision-maker in Plaintiff's demotion) bolsters the significance of the same. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333 (3d Cir. 1995) (noting "that stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision") (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir.), *cert. denied*, 510 U.S. 826 (1993)). Ms. Devore's statement, which a jury may view as circumstantial evidence of age discrimination, *see Brewer*, 72

---

[18] In addition to Plaintiff's alleged deficiencies in managing the larger Prospect facility, Defendant also offers his alleged failure to cure these deficiencies after being counseled and receiving a written warning dated March 18, 2003 as an additional legitimate, non-discriminatory reason for his demotion. (Docket No. 28, at 10). This second purported legitimate, nondiscriminatory reason fails for the same reasons as above, i.e., genuine issues of material fact remain as to the actual condition of the Prospect facility during Plaintiff's tenure as manager, both before and after his transfer to and from the Slippery Rock facility. As to the decrease in sales volume, because Defendant apparently relied on this purported nondiscriminatory reason in conjunction with, and not in the alternative to (i.e., as a separate and distinct reason), the condition of the Prospect facility as a legitimate basis for Plaintiff's demotion, the Court need not address the same. *See* Docket No. 30-3, at ¶10 ("On September 9, 2005, Plaintiff was demoted from manager to assistant manager due to his inability to manage the Prospect facility, to rectify problems that he had been warned about on several occasions, *in addition to* a decrease in sales volume") (Declaration of Pamela Devore) (emphasis added). In other words, Defendant fails to argue or direct the Court to any evidence that it would have demoted the Plaintiff based on the decrease in sales volume *alone*. Moreover, the Court notes Plaintiff's response to the alleged lack of sales contention, i.e., lower prices at competing stores, which the Court finds a plausible justification.

F.3d at 333-334 (concluding that statement in company newsletter highlighting "two of our star young men in their mid-40s" and noting "[t]hat age group is our future" constitutes relevant evidence of age discrimination because "[w]hile a factfinder could find [the employee]'s comment too abstract to evince age discrimination, it may also be considered by the jury as evidence of the corporate culture in which the employment decision to discharge [plaintiff] was made, and circumstantial evidence of age discrimination"), coupled with the above factual inconsistencies which strike at the heart of Defendant's legitimate, nondiscriminatory reason and which hinge on the credibility of certain witnesses, requires that summary judgment be denied as to the ADEA claim.

B.  **Retaliation claim**[19]

Defendant argues that it is entitled to summary judgment because Plaintiff's Complaint fails to establish a *prima facie* case of retaliation. In particular, Defendant addresses the following allegations of retaliation: (1) "write-ups" received by Plaintiff relating to cash shortages, "drive-offs", failure to find a replacement cashier as manager, and failure to follow certain instructions as manager; (2) being forced to work without adequate breaks; and (3) Defendant's failure to provide adequate help to Plaintiff.[20] Specifically, as to the "write-ups," Defendant asserts that said action

---

[19] While not clear from Plaintiff's Amended Complaint and Jury Demand, it appears that Plaintiff pleads his claim for retaliation under the ADEA, considering that the parties stipulated to the dismissal of Plaintiff's Title VII claims. Nevertheless, "[t]he ADEA's provision against retaliatory discharge is identical to that of Title VII." *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006); *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (noting that because the anti-retaliation provisions of the ADEA and Title VII are nearly identical (as well as that of the Age in Discrimination Act), "we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others")). Thus, retaliation claims under the ADEA are analyzed under the same analysis as Title VII.

[20] In response, Plaintiff limits his retaliation claim to the write-ups, *see* Docket No. 32, at 17

does not amount to an adverse action and that Plaintiff cannot show that the write-ups were causally connected to the filing of the EEOC charges or the instant lawsuit.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (1)[he] engaged in activity protected by Title VII; (2) the employer took an adverse employment against [him]; and (3) there was a causal connection between [his] participation in the protected activity, and the adverse employment action." *Moore v. City of Philadelphia*, 461F.3d 331 (3d Cir. 2006) (alterations in original).[21] Defendant challenges the latter two prongs and thus the Court will address the same in turn.

1.  *Materially adverse action*

First, Defendant argues that the write-ups cannot be considered an adverse action because they were in accordance with company policy and Plaintiff was not being treated any differently than other, younger employees in the administration of the policy. (Docket No. 28, at 5). In particular,

---

n.3, and thus the Court considers Plaintiff's retaliation claim based on the other alleged, retaliatory actions (i.e., the lack of adequate breaks and the lack of adequate help) as withdrawn and therefore the Court declines to address the same.

[21]

The ADEA's anti-retaliation provision states as follows:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

29 U.S.C. § 623(d). The anti-retaliation provision under the PHRA is nearly identical. *See* 42 Pa. C.S.A. § 955(d).

Defendant asserts that "no adverse employment action has been taken against Hempfling because of these write-ups", i.e., Plaintiff "did not receive any change in the terms and conditions of his employment, did not receive any penalties, and has not received any decrease in pay or benefits." *Id.* Defendant further contends that the write-ups do not rise to the level "materially adverse", as that phrase is defined by the Supreme Court.

Recently in *Burlington Northern & Safe Fe Railway v. White*, --- U.S. ----, 126 S.Ct. 2405, 2414 (June 22, 2006), the Supreme Court addressed the applicable standards in Title VII's anti-retaliation provision. There, an employee alleged that her employer's actions, namely changing her job responsibilities and suspending her without pay for thirty-seven days, amounted to unlawful retaliation under Title VII. In considering her claim, the Supreme Court addressed the scope of Title VII's anti-retaliation provision, specifically whether the "discriminate against" provision confined actionable retaliation to activity that affects the terms and conditions of employment. 126 S.Ct. at 2408. Answering in the negative, the Court concluded "that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Id.*, at 2409.

Next, the Court addressed the issue of how harmful the adverse action must be in order to fall within the scope of Title VII's retaliation provision, ultimately concluding that "that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." 126 S.Ct. at 2408. The Court explained that "materially adverse" means "that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* "Stated differently, a plaintiff may meet his burden by demonstrating that her employer's conduct is 'likely

17

to deter victims of discrimination from complaining to the EEOC.'" *Roberti v. Becker Subaru*, Civil Action No. 07-1740, 2007 WL 4197421, at *2 (E.D. Pa. Nov. 26, 2007) (quoting *Burlington Northern*, 126 S.Ct. at 2415). Based thereon, the Court held that whether reassignment of duties and a 37-day suspension constituted materially adverse action was a question for the jury.

Applying the *Burlington Northern* standard to the instant case, the question is whether the write-ups received by Plaintiff would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

As an initial point, in response to Defendant's argument that Plaintiff "did not receive any change in the terms and conditions of his employment, did not receive any penalties, and has not received any decrease in pay or benefits" as a result of the write-ups, (Docket No. 28, at 5), the Court notes that such is not required by *Burlington Northern*. In point of fact, the Court in *Burlington Northern* found that Title VII's anti-retaliation provision does not merely prohibit an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment." On the contrary, *Burlington Northern* found that the retaliation statute "sweeps broadly enough to prohibit other 'materially adverse' actions taken in retaliation for activity protected under the statute." *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 710 (W.D. Pa. 2006) (citing *Burlington Northern,* 126 S.Ct. at 2411, 2415). In other words, the retaliation statute "extends beyond workplace-related or employment-related retaliatory acts and harm," *Burlington Northern*, 126 S.Ct. at 2414, and "prohibits a broad category of actions by an employer." *McGraw-Hill Companies*, 451 F.Supp.2d at 710 (citing *Burlington Northern*, 126 S.Ct. at 2411). Accordingly, based on the Court's reading of *Burlington Northern*, the mere fact that the complained-of "write-ups" did not *per se* affect "compensation, terms, conditions, or privileges of

employment" is not fatal to Plaintiff's retaliation claim. *See Cooper v. City of Philadelphia*, Civil Action No. 06-576, 2007 WL 1825399, at *5 (E.D. Pa. June 21, 2007) (concluding that poor performance evaluation and letter of warning constitute adverse employment actions).[22]

Moreover, the Court finds significant that, on several occasions, the Plaintiff received write-ups for cash drawer shortages during which another employee worked the same cash drawer, specifically Plaintiff's replacement, Mr. Zorbas, yet that employee did not receive a write-up for the same. *See supra*, note 14. Accordingly, in the Court's estimation, while a "write-up" or other written warning *may not* constitute a materially adverse action in all circumstances and the Court declines to adopt a *per se* rule holding the same, based on the facts presented here and construing the facts in favor of the Plaintiff, a reasonable fact-finder could conclude that the write-ups received by Plaintiff and not by Mr. Zorbas *for the same conduct* may "dissuade a reasonable worker from making or supporting a charge of discrimination."[23] *See Burlington Northern*, 126 S.Ct. at 2415 ("We phrase the standard in general terms because the significance of any given act of retaliation *will often depend upon the particular circumstances. Context matters*") (emphasis added).

2. *Causal connection*

Defendant argues that "Plaintiff cannot show that these write-ups were causally connected to the filing of the filing of his EEOC charges or this lawsuit." (Docket No. 28, at 6).

---

[22]

In addition, Plaintiff provides evidence that write-ups may lead to termination. *See* Docket No. 31-14, at 33:12-14 ("The last write-up I got I believe said on it one more shortage or one more write-up will result in termination") (Deposition of Samantha Sue Shaffer).

[23]

The Court finds that the apparent inconsistent issuance of write-ups by Defendant refutes its argument that it issued the write-ups in accordance "with company policy." *See* Docket No. 28, at 5-6; Docket No. 40, at 10.

"The requisite causal connection may be established by showing a close temporal proximity between the protected activity and the alleged retaliatory conduct, or by submitting "circumstantial evidence ... that give[s] rise to an inference of causation." *Samuels v. Postmaster General*, No. 07-3823, 2007 WL 4351227, at *2 (3d Cir. Dec. 13, 2007) (quoting *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)). The adverse employment action must have taken place after or at the same time as the employee's protected activity in order to show the required causal connection. *Fielding v. Temple University*, 2007 WL 3047238, at *9 (E.D. Pa. 2007) (citing *Roginson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)). In addition, evidence that can be considered probative of the causal link between protected activity and an adverse employment action "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus," but can be "other evidence gleaned from the record as a whole from which causation can be inferred." *Farrell*, 206 F.3d at 281 (3d Cir. 2000).

Here, the Court finds that the number of write-ups that Plaintiff has received since he filed the EEOC charges (approximately 13) as well as the evidence that, "on several occasions," Plaintiff but not his co-employee received write-ups for conduct possibly attributable to either employee establishes an inference of causation by a preponderance of the evidence.

## CONCLUSION

Accordingly, based on the foregoing, the Motion for Summary Judgment of Defendant United Refining Company of Pennsylvania [DE 27] is denied. An appropriate order to follow.

Date: January 23, 2008.
cc/ecf: All counsel of record

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge